STATE DIVISION OF HUMAN RIGHTS on the Complaint of ALBERT P. KOZLOWSKI, Petitioner, v STATE OF NEW YORK, EXECUTIVE DEPARTMENT, DIVISION OF STATE POLICE, et al., Respondents.

Fourth Department, May 26, 1978

APPEARANCES OF COUNSEL

*James M. White* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Lawrence Doolittle* and *Ruth Kessler Toch* of counsel), for State of New York, Executive Department, respondent.

*Ann Thacher Anderson* for State Division of Human Rights.

*Richard E. Bolton* for New York State Police.

## OPINION OF THE COURT

MOULE, J. P.

The principal questions raised in this proceeding under section 298 of the Executive Law are whether petitioner's mandatory retirement from the Division of State Police at age 55, pursuant to subdivision e of section 381-b of the Retirement and Social Security Law, violates the prohibition against age discrimination set forth in subdivision 3-a of section 296 of the Executive Law, and whether this mandatory retirement provision is valid under the equal protection clause of the Fourteenth Amendment of the United States Constitution.

Petitioner joined the Division of State Police as a uniformed officer on May 17, 1947. By 1969, the year in which he became 50 years old, he had achieved the rank of zone sergeant. On May 2, 1969, section 381-b of the Retirement and Social Security Law was approved by the Legislature (L 1969, ch 336). This statute enacted a 20-year retirement plan for the Division of State Police which had been negotiated between

the State and the Police Benevolent Association under the Taylor Law (NY Legis Ann, 1969, p 56). The plan provided for a mandatory retirement age of 55 for State Police members entering service after April 1, 1969. Members in service before that date could elect to be covered under the plan by filing a timely application with the State Comptroller. A week after its enactment, subdivision e of section 381-b of the Retirement and Social Security Law was amended to exempt from its provisions for mandatory retirement at age 55 the 16 top State Police management positions (L 1969, ch 470). The negotiations between the State and Police Benevolent Association could not provide an agreement on the retirement age for top management personnel because those jobs were not within the units represented at the negotiations (NY Legis Ann, 1969, p 56). The amended statute required that persons in these management positions retire at age 60. Both the original legislative enactment and the amendment were effective April 1, 1969.

On August 15, 1969 petitioner executed an acknowledged document entitled "Election Form for 20 Year Retirement Plan/Division of State Police—Section 381-b." In it he elected to be covered by the provisions of section 381-b of the Retirement and Social Security Law and he withdrew an election previously made to contribute to a retirement plan established by section 381-a of the Retirement and Social Security Law, under which the mandatory retirement age was 70. In accordance with the elected plan provisions, petitioner was notified in November of 1974 that he had from 30 to 60 days to apply for retirement benefits. At that time he was 55 years old and had served more than 27 years with the State Police. Petitioner retired on December 31, 1974.

On April 30, 1975 petitioner filed a verified complaint with the State Division of Human Rights charging respondents Division of State Police and State Policemen's and Firemen's Retirement System with unlawful age discrimination under subdivision 3-a of section 296 of the Executive Law. He alleged that the provisions of the retirement plan under subdivision e of section 381-b of the Retirement and Social Security Law calling for his mandatory retirement at age 55 caused him to be discriminated against because the mandatory retirement age of members above the rank of major under this plan was 60. After a preliminary investigation, the State Division of Human Rights made a determination and order dismissing

petitioner's complaint. It found that it did not have jurisdiction in the matter because of "an irreconcilable conflict" between subdivision e of section 381-b of the Retirement and Social Security Law providing for mandatory retirement of State Police at age 55 and subdivision 3-a of section 296 of the Executive Law prohibiting unlawful age discrimination in employment between the ages of 40[1] and 65. The State Human Rights Appeal Board affirmed the determination and order of the State Division of Human Rights, finding that the division's dismissal of the complaint had not been arbitrary, capricious, or an abuse of discretion.

Petitioner brought this proceeding for review of the determination of the Appeal Board seeking an annulment of its determination, a declaration that subdivision e of section 381-b of the Retirement and Social Security Law is unconstitutional, reinstatement to his former position as zone sergeant until he reaches age 60, reimbursement for wages lost as a result of his forced retirement, and reinstatement to his former retirement plan as if he had been in continuous appointment, subject to mitigation in the amount of benefits already received. He alleged that subdivision e of section 381-b of the Retirement and Social Security Law discriminated against him because it gave preferential treatment to all officers of the State Police above the rank of major in that their mandatory retirement age was 60 rather than 55 and that the statute more particularly discriminated against him because of his position as a zone sergeant, which was primarily of an administrative nature such as that of the preferred officers.[2]

Preliminarily, we note that in a proceeding under section 298 of the Executive Law, we cannot consider an objection that has not been urged in prior proceedings. Inasmuch as the Appeal Board has no authority to pass upon constitutional questions (see Executive Law, § 297-a), we may not pass upon the constitutionality of subdivision e of section 381-b of the Retirement and Social Security Law in this proceeding. How-

---

1. Subdivision 3-a of section 296 of the Executive Law was amended in 1975 so as to prohibit unlawful age discrimination in employment between the ages of 18 and 65 (L 1975, ch 803).

2. Respondents in their answer alleged that despite the fact that as a zone sergeant, petitioner performs substantially more administrative work than field work, in the event of an emergency, petitioner may be required as a uniformed member of the force to engage instantly in police activity demanding physically strenuous and hazardous work.

ever, insofar as constitutional questions are presented, we may properly treat the proceeding as an action for a declaratory judgment (CPLR 103, subd [c]; *Carey v New York State Human Rights Appeal Bd.,* 61 AD2d 804; see *Matter of Du Bois v Town Bd. of Town of New Paltz,* 35 NY2d 617; *Matter of Concord Realty Co. v City of New York,* 30 NY2d 308, 314; *Erie County Water Auth. v County of Erie,* 47 AD2d 17). The necessary parties are before the court and the Attorney-General has appeared in support of the constitutionality of the challenged legislation. Furthermore, to require commencement of a separate action for a declaratory judgment would serve no purpose under these circumstances.

Petitioner contends that his mandatory retirement at age 55 under subdivision e of section 381-b of the Retirement and Social Security Law violates subdivision 1 of section 291 and subdivision 3-a of section 296 of the Executive Law. Under subdivision 1 of section 291 of the Executive Law, the opportunity to obtain employment without discrimination because of age, race, color, creed, national origin, sex, or marital status is declared to be a civil right.[3] Sections 296 and 296-a[4] of the Executive Law set forth acts constituting "unlawful discriminatory practices". Under section 296 (subd 1, par [a]) of the Executive Law, it is an unlawful discriminatory practice for an employer to discharge an individual or to discriminate against him in compensation, terms, conditions, or privileges of employment because of the age, race, creed, color, national origin, sex, disability, or marital status of that individual. Under paragraph (a) of subdivision 3-a of the same section, it is an unlawful discriminatory practice for an employer to terminate an individual from employment or to discriminate against him in promotion, compensation, terms, conditions, or privileges of employment because he is between the ages of 18 and 65.

Unlawful discriminatory practices are expressly limited to those specified under sections 296 and 296-a of the Executive Law (Executive Law, § 292, subd 4). Furthermore, the proscriptions against age discrimination set forth in subdivisions 1 and 3-a of section 296 of the Executive Law are subject to the exception that "nothing contained in [these subdivisions]

---

3. The opportunity to obtain employment without discrimination because of age was added to this section in 1975 (L 1975, ch 803).

4. This section, entitled "Unlawful discriminatory practices in relation to credit", is inapplicable here.

shall be construed * * * to affect the retirement policy or system of any employer where such policy or system is not merely a subterfuge to evade the purposes of said subdivisions" (Executive Law, § 296, subd 3-a).

In *United Air Lines v McMann* (434 US 192), decided December 12, 1977, the Supreme Court was faced with the question whether, under the Federal Age Discrimination in Employment Act of 1967 (ADEA), the mandatory retirement of an employee over his objection at age 60 was permissible under the provisions of a bona fide retirement plan. Section 4 (subd [a], par [1]) of ADEA made it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to his compensation, terms, conditions or privileges of employment, because of age (US Code, tit 29, § 623, subd [a], par [1]). An exception to this prohibition allowed an employer to observe the terms of a "bona fide seniority system or any bona fide employee benefit plan such as a retirement or pension plan which is not a subterfuge to evade the purposes" of ADEA (US Code, tit 29, § 623, subd [f], par [2]).[5] Under this exception, the court upheld the mandatory retirement program. Although not controlling with respect to our construction of the Executive Law (see *Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd.*, 41 NY2d 84, 86 [n 1], 91), the language of the Supreme Court is instructive. The court stated: "In ordinary parlance, and in dictionary definitions as well, a subterfuge is a scheme, plan, stratagem or artifice of evasion. In the context of this statute, 'subterfuge' must be given its ordinary meaning and we must assume Congress intended it in that sense" (434 US 192 at p 203).

It is clear that petitioner's mandatory retirement under subdivision e of section 381-b of the Retirement and Social Security Law was not a subterfuge to evade the purposes of the age discrimination provisions of the Executive Law and,

---

5. Paragraph 2 has since been amended to provide that "no such seniority system or employee benefit plan shall require or permit the involuntary retirement of [an individual between the ages of 40 and 70] because of the age of such individual" (Age Discrimination in Employment Act Amendments of 1978, Pub L No. 95-256, April 6, 1978). The comparable New York provision for qualifying retirement systems embodied in subdivision 3-a of section 296 of the Executive Law does not contain this restriction on mandatory retirement. Since petitioner has asserted no cause of action under ADEA, our decision is limited to his claimed violations of the Executive Law and the equal protection clause. This decision is made without prejudice to petitioner's rights, if any, under the recently amended Federal statute.

therefore, was not within its ban on age discrimination (cf. *Matter of New York State Teachers' Retirement System v New York State Div. of Human Rights,* 83 Misc 2d 993). The retirement plan was agreed upon by representatives of the uniformed members of the State Police through negotiations with the State. Members who were already in service at the time it was enacted were given a choice of either joining this plan or maintaining coverage under their previous plan. Furthermore, it was enacted by the State Legislature itself, after the enactment of the age discrimination provisions of the Executive Law.

██ The State Division of Human Rights found that there was an irreconcilable conflict between subdivision e of section 381-b of the Retirement and Social Security Law and subdivision 3-a of section 296 of the Executive Law, and that the Retirement and Social Security Law provision was controlling. Inasmuch as these two statutes can be read together in a consistent manner, there is no conflict. Nevertheless, even were we to find that subdivision e of section 381-b of the Retirement and Social Security Law cannot be reconciled with the age discrimination provisions of the Executive Law, the former must prevail because it was enacted at a later date[6] (McKinney's Cons Laws of NY, Book 1, Statutes, § 398 [and cases cited therein]). The addition in 1975 of age discrimination to the enumeration of proscribed activities contained in the definition of "civil right" under subdivision 1 of section 291 of the Executive Law would not require a different result. Although this redefinition of "civil right" was accomplished after the enactment of section 381-b of the Retirement and Social Security Law, the definition of "unlawful discriminatory practices" contained in subdivision 3-a of section 296 of the Executive Law had encompassed age discrimination since its enactment in 1958 (L 1958, ch 738), prior to the adoption of section 381-b of the Retirement and Social Security Law. It is evident that the Legislature could not have intended to repeal section 381-b of the Retirement and Social Security Law by its subsequent definition of "civil right" to include freedom from age discrimination, since it had expressly excepted qualified retirement plans from "unlawful discriminatory practices"

---

6. Section 381-b of the Retirement and Social Security Law was enacted in 1969 (L 1969, ch 336); subdivision 3-a of section 296 of the Executive Law was enacted in 1958 (L 1958, ch 738).

relating to age discrimination ever since the enactment of subdivision 3-a of section 296 of the Executive Law.

■ Petitioner contends secondly that his mandatory retirement under subdivision e of section 381-b of the Retirement and Social Security Law violates the equal protection clause of the Fourteenth Amendment of the United States Constitution. *Massachusetts Bd. of Retirement v Murgia* (427 US 307) is dispositive of this contention. In *Murgia,* the Supreme Court upheld a Massachusetts statute providing for the mandatory retirement of uniformed State Police officers at age 50. Applying the traditional "rational basis" test rather than "strict scrutiny", the court held that the mandatory retirement provision for uniformed police officers was rationally related to a legitimate purpose. The court found that the Massachusetts Legislature sought by this enactment to protect the public by assuring physical preparedness of its uniformed police and that, since physical ability generally declines with age, mandatory retirement served to remove from service those whose fitness for uniformed work diminished with age.

The legislative memorandum in support of section 381-b of the Retirement and Social Security Law sets forth the New York Legislature's reasons for the mandatory retirement age of 55 for members of the State Police, as well as its reasons for allowing a mandatory retirement age of 60 for higher level personnel:

"A low mandatory retirement age is necessary for most members of the State Police. The strenuous and often hazardous physical demands of the job require young and vigorous men to fill the positions.

"This reasoning does not apply to top-management, however, because their duties do not require physically strenuous and hazardous work.

"Moreover, retention of more experienced, senior police officers in top-management is often desirable for proper administration of the State Police. Failure to provide a higher mandatory retirement age for top-management would impair the Superintendent's ability to retain competent and valuable men for those demanding jobs.

"The mandatory retirement age of 60 provided by the bill for top-management is sufficiently low to assure that the incumbents will be able to fulfill their duties. Furthermore, lowering the mandatory retirement age to 60 from the present 62 will mean more frequent promotions to fill these top jobs,

which should be beneficial for morale." (NY Legis Ann, 1969, p 56.)

Petitioner claims that these reasons are insufficient to validate subdivision e of section 381-b of the Retirement and Social Security Law under the equal protection clause. However, the Supreme Court found the rationale with respect to the demanding nature of uniformed police work to be persuasive, and we see no basis for finding it inadequate here. With respect to the distinction between the retirement ages of top management and the remaining members of the force, we note that a similar challenge to the Massachusetts' statute was rejected by the Supreme Court (427 US 307, 314-315 [n 7, 8], *supra*). We find that the distinction drawn by the Legislature between senior police officers and the remaining members of the Division of State Police is sufficient under the rational basis test in the absence of controverting facts, and petitioner has offered nothing in the way of factual proof to support his claims of constitutional infirmity.

■ A further reason for denying petitioner's challenge to subdivision e of section 381-b of the Retirement and Social Security Law is that he voluntarily elected to be covered by its provisions. Respondents have asserted that petitioner benefited by obtaining superior retirement benefits under section 381-b and this assertion remains undenied. "[I]t is firmly established that one who partakes of advantages which a statute affords is ordinarily barred from attacking the statute on constitutional grounds" (8 NY Jur, Constitutional Law, §§ 57, 58; see *Bouffier v Frank,* 389 F Supp 502, 504-505).

Accordingly, the determination of the Appeal Board should be confirmed, the petition should be dismissed, and subdivision e of section 381-b of the Retirement and Social Security Law should be declared constitutional.

CARDAMONE, SIMONS, HANCOCK, JR., and DENMAN, JJ., concur.

Determination unanimously confirmed, without costs, and petition dismissed.