JAMES SCOTT HAMMACK *v.* STATE OF INDIANA.

[No. 577S354. Filed June 20, 1978.]

*Richard L. Milan, Craven & Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Victoria Van Duren,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with and convicted of first degree murder, Ind. Code § 35-13-4-1 (Burns 1975), in a trial by jury. He was sentenced to imprisonment for life, and raises the following issues on appeal:

(1) The sufficiency of the evidence upon the elements of purposefulness, premeditation, malice.

(2) Sufficiency of the evidence to negate the claim of self defense.

The evidence presented at trial consisted of conflicting testimony upon several points. Although the defendant conceded that he had a gun in his possession which he fired at the decedent, Rodney Gilstrap, resulting in his death, he contended that he shot Gilstrap in self-defense only after Gilstrap approached him carrying a sawed-off shotgun.

## ISSUES I and II

Where conflicting evidence is presented at trial, this Court on review will look only to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom in determining whether there is sufficient evidence of probative value from which the

jury could have reach the verdict beyond a reasonable doubt. *Baum* v. *State,* (1976) 264 Ind. 421, 345 N.E.2d 831. We will neither reweigh the evidence nor judge the credibility of the witnesses in making this determination. *Robinson* v. *State,* (1977) 266 Ind. 604, 365 N.E.2d 1218.

The evidence as viewed most favorably to the State indicates that the decedent had previously been married to the defendant's wife, Rita. They had had two children who were living with the defendant and Rita at the time of the shooting. On several occasions prior to the shooting the defendant and his wife had discussed the decedent and his visitation rights. The defendant believed that Rita should not let the decedent come and see the children because they did not care about him.

On the night prior to the shooting the two children had spent the night with the decedent and Denise Worley, with whom he was currently living. On the next day, Monday, July 19, after the children had been returned to the defendant's home, the defendant's wife took them, packed some clothing and left the defendant. The defendant became aware of her having gone when he returned home from work that evening. On the stand he testified that he spent about an hour and a half that night driving around looking for her. He admitted that they had had a disagreement, although he claimed that her leaving did not upset him.

State's witness Denise Worley took the stand and testified that on July 19 the decedent stopped by his mother's home at around 5:30 p.m. to pick her up. They left at around 6:30 to go to a parade, stopping by his brother's home on the way. Ms. Worley stated that she was in the company of the decedent until the time that the parade started. There was testimony by several other witnesses placing the defendant in their company throughout the rest of the evening. At approximately 10:00 p.m. Ms. Worley and the decedent left the fair, going first to his mother's home to pick up her son. As they were driving north out of town, she noticed a car following them. There was a brief conversation concerning the car,

after which the decedent drove off of the road, travelling across the south-bound lane and onto the gravel. The operator of the following car drove it directly behind them and stopped. The decedent got out of the truck and went back to the car. At that time he was carrying nothing in his hands. The witness turned around but could see nothing. On hearing what she thought sounded like a gunshot she got out of the truck and found the decedent lying on the ground. The other vehicle was departing at high speed. She observed part of its license number and reported it to the police. The defendant was apprehended later that evening in a car bearing the license number which she reported.

The defendant took the stand and presented a very different version of the events as they occurred that evening. He stated that the decedent had come to see him at around 7:00 that evening to talk but that he told the decedent that they had nothing to discuss and the decedent left. The next time that he saw the decedent, they were on the town square in Salem. He testified that the decedent was approaching the square from East Market Street, deliberately pulled out in front of him and motioned for him to follow, which he did. The decedent drove out of town and stopped alongside the road. The defendant followed and stopped behind him. At that point, the decedent got out of his truck, and the defendant once again stated that they had nothing to discuss. The decedent returned to the truck, picked up a sawed-off shotgun and started back to the car. When the defendant saw the shotgun he took a gun from the front seat of the car and removed it from its case. All that he remembered afterwards was that he thought that he cocked the gun (which had to be manually cocked to be fired) and that it went off simultaneously with the shotgun. The defendant fled the scene, claiming he did not know if he had shot the decedent or not. The police officers who arrested the defendant, testified that the defendant stated at the time of his apprehension that he had shot a man.

Based upon his version of the incident, the defendant con-

tends that the jury could not have found the existence of each of the elements of first degree murder beyond a reasonable doubt, as found in Ind. Code § 35-13-4-1 (Burns 1975) :

> a) Whoever kills a human being * * * purposefully and with premeditated malice * * * is guilty of murder in the first degree * * * .

However, it was within the province of the jury to determine which story to believe. The facts as related by Ms. Worley clearly support a conviction of first degree murder.

As has been often stated by this Court, malice may be inferred from the use of a deadly weapon in a manner likely to produce death, with the purpose to kill inferred from the act of killing. *Clark* v. *State*, (1976) 265 Ind. 161, 352 N.E.2d 762. The evidence indicates that the defendant and the decedent had been having family problems, which had become worse according to the defendant on the weekend in question. The State's evidence was that the defendant followed the decedent out of town, and that when the decedent got out of the truck unarmed, the defendant removed his gun from its case, manually cocked the trigger and fired, killing the decedent. The above facts constitute sufficient evidence of premeditation to sustain the jury's finding. *See Kerns* v. *State*, (1976) 265 Ind. 39, 349 N.E.2d 701.

Finally, although the burden rested upon the State to show that the defendant did not act in self-defense, whether the State met this burden was a question of fact to be determined by the jury. *Clark* v. *State, supra; King* v. *State*, (1968) 249 Ind. 699, 234 N.E.2d 465. In the instant case there was substantial evidence presented by the State negating the defendant's contention that his life was in danger. Several witnesses testified that to their knowledge the decedent had never owned a sawed-off shotgun. Ms. Worley testified that the decedent was empty handed when he left the truck for the first and only time just prior to the shooting and finally, no shotgun was ever found or introduced

into evidence, substantiating the defendant's version of the events.

We find no error. The judgment of the trial court is affirmed.

Givan, C.J., and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 376 N.E.2d 1147.