Silas PARKER, Plaintiff-Appellant,

v.

The STATE of Indiana; Indiana Department of Administration, Personnel Division; Indiana Department of Public Welfare, Wayne A. Stanton, Administrator, and John D. Kelley, Director, Lake County Department of Public Welfare, Defendants-Appellees.

No. 3–777A172.

Court of Appeals of Indiana,
Third District.

Feb. 11, 1980.

⬤➙211(3)

Wendell W. Goad, Merrillville, for plaintiff-appellant.

Theo. L. Sendak, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for defendants-appellees.

GARRARD, Presiding Judge.

On June 22, 1976, appellant Silas Parker commenced an action in the Lake County Superior Court in Hammond, Indiana seeking a declaratory judgment and injunctive relief. Parker worked as a caseworker in the Food Stamp Program for the Lake County Department of Public Welfare. In the suit, he contested his compulsory retirement as mandated by IC 4–15–8–2 (1976) which provides,

> Sec. 2. (Compulsory retirement) Every state employee which, by IC 1971, 4–13–1, is under the control of the personnel board shall be retired compulsorily on his anniversary date immediately following his attainment of seventy [70] years of age.[1]

Parker first began his job with the Lake County Department of Public Welfare on July 1, 1968. He turned seventy on September 15, 1975. In accordance with the above statute, he was informed that he would be retired as of July 1, 1976, the first anniversary date of his employment subsequent to his seventieth birthday. On July 12, 1976, the defendants filed a motion to dismiss for failure to state a claim upon

1. IC 4–13–1–11 (1976) abolishes the state personnel bureau and in so doing states, "The state personnel board shall continue to exercise the powers and duties imposed upon it by the State Personnel Act with respect to the merit system." The State Personnel Act, IC 4–15–2–1 to –46 (1976) which establishes a comprehensive merit system for certain state government positions, includes within its provisions employees of the various county departments of public welfare. IC 4–15–2–3(a)(1) (1976). *See also Indiana Personnel Board v. Galloway* (1976) Ind.App., 342 N.E.2d 903; 25 IAC 3–1–1(L) (1979); Note, *Indiana Legislation*—1941, 17 Ind.L.J. 129, 186 (1941). Therefore, appellant, being a merit employee, was subject to the jurisdiction of the personnel board and accordingly, covered by the terms of the mandatory retirement law.

which relief could be granted. Indiana Rules of Procedure, Trial Rule 12(B)(6). After receiving written memorandums supporting each side's position, the trial court granted the motion on March 29, 1977, and this appeal followed.

In contending that the dismissal of his complaint was erroneous, appellant presents four main issues for review: (1) Whether he failed to receive proper statutory notification of his impending mandatory retirement so as to preclude his termination; (2) Whether the trial court erred in not affording him an opportunity to amend his complaint prior to dismissal; (3) Whether the statutory scheme relating to appellant's compulsory retirement violates the equal protection clause of the fourteenth amendment to the U.S. Constitution and article 1, § 23 of the Indiana Constitution; and (4) Whether the same statutory scheme violates the due process clause of the fourteenth amendment to the U.S. Constitution and article 1, § 12 of the Indiana Constitution.

In determining the propriety of a dismissal pursuant to Trial Rule 12(B)(6), we note that under our system of "notice" pleading, the plaintiff is merely required to make a clear and concise statement in order to put the defendant on notice that he has a justiciable claim and is entitled to relief under some legal theory. *Roberts v. State* (1974), 159 Ind.App. 456, 307 N.E.2d 501; *McCarthy v. McCarthy* (1971), 150 Ind.App. 640, 276 N.E.2d 891. We must consider whether in the light most favorable to the plaintiff and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. *Needham v. Fred's Frozen Foods, Inc.* (1977), Ind.App., 359 N.E.2d 544; *Dubois County Machine Co. v. Blessinger* (1971), 149 Ind.App. 594, 274 N.E.2d 279. The granting of a 12(B)(6) motion is only appropriate when it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *State v. Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604; *Soltes v. School City of East Chicago* (1976), Ind.App., 344 N.E.2d 865. With this standard of review in mind, we now proceed to the merits of the appeal.

Regarding the notice issue, IC 4–15–8–4(a) (1976) provides,

Sec. 4. (Notification of Employee) (a) In order for the retirement to be compulsory the personnel director must notify each employee and the appointing authority or his designee of the state agency in which the employee is working of the employee's compulsory retirement at least ninety [90] days prior to the effective date of the employee's retirement.

In his memorandum in opposition to the state's motion to dismiss, Parker stated that he did receive notice of the required July 1, 1976 termination in a letter dated May 13, 1975, which also advised him that the notice of mandatory retirement would follow approximately ninety days prior to the July retirement date. The state admitted in its answer that this later notice was not sent. Furthermore, Parker indicated in this same memorandum, as well as in his complaint and in his motion to correct errors, that sometime nearer to the termination date (the exact time is not given), John D. Kelley, Director of the Lake County Department of Public Welfare, advised appellant's immediate supervisor, Glen Rankin, that appellant would not be allowed to work beyond June 30, 1976. This information was then relayed verbally by Rankin to appellant. Nonetheless, it is appellant's position that since he was not personally notified in writing as promised in the May 13 letter, there has not been sufficient adherence to the statutory notification requirement and his involuntary retirement is precluded.

We believe the statutory requirement was met. Although the state did not provide the follow-up letter referred to in the 1975 letter, there was nothing equivocal about the proposed compulsory retirement of Parker. Nor has Parker asserted that he was prejudiced in fact by the failure.

Appellant next claims that the trial court erred in not affording him a chance to amend his complaint before dismissing it. Trial Rule 12(B)(8) provides in pertinent part,

When a motion to dismiss is sustained for failure to state a claim under subsection (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule.

It is apparent from the rule that the opportunity to amend the complaint as a matter of right pursuant to TR 12(B)(8) accrues *after* the trial court has sustained a party's motion to dismiss, rather than before. *State ex rel. Young v. Noble Circuit Court* (1975), 263 Ind. 353, 332 N.E.2d 99; *Brendanwood Neighborhood Association v. Common Council of Lebanon* (1975), 167 Ind. App. 253, 338 N.E.2d 695. Here, there is nothing in the record whatsoever indicating that appellant ever attempted to file an amended complaint. As we noted in *Brown v. Gardner* (1974), 159 Ind.App. 586, 308 N.E.2d 424 where we upheld the granting of a 12(B)(6) motion,

> If the party opposing the motion desires to present an avoidance of the statute, he may, under TR. 12(B) offer to the court matters outside the pleading. If the court permits their consideration, the proceeding will then be treated as one for summary judgment. As an alternative, the party may exercise his right to amend in the event the motion is sustained. The appellant here did neither, and the decision of the trial court was proper.

*Id.* at 592, 308 N.E.2d at 428–29. Thus, in order to take advantage of our trial rules in the case at bar Parker should have moved the court for leave to amend his complaint within the prescribed ten day period. His failure to do so prevents him from complaining at this time.

█ We now turn to Parker's contention that the statute mandating his retirement, IC 4–15–8–2 (1976), violates the equal protection guarantee of the fourteenth amendment and the "equal privileges" guarantee found in article 1, § 23 of the Indiana Constitution.[2] It is well established that the rights intended to be protected under each of these constitutional provisions are identical. *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763; *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495. Therefore, we will treat them together in addressing Parker's argument. His equal protection claim is based on the theory that the statute creates an impermissible classification based on age, that it infringes on an alleged fundamental right to work, and that mandatory retirement deprives him of a fundamental right to life. In sustaining the 12(B)(6) motion, the trial court used the "rational basis" standard and found that the statute bore "a rational relationship to a proper state objective."

Parker asserts that the court erred in granting the dismissal because he should have been allowed to introduce evidence showing that the "strict scrutiny" test is the proper one to utilize in evaluating his constitutional attack and that the state should be required to demonstrate a "compelling interest" before the legislation can be upheld. *Brown v. State* (1975), 262 Ind. 629, 322 N.E.2d 708; *Indiana High School Athletic Association v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66. In the alternative Parker contends that even if the rational basis test is appropriate under these circumstances, he still should have been permitted to present evidence proving that there is no legitimate state objective underlying the statute, that the statutory classification is both overinclusive and underinclusive, that the state has not utilized a reasonable means to accomplish the purpose behind the legislation, that the law has the effect of excluding so few employees who are in fact unqualified as to render age seventy a criterion wholly unrelated to the state's objective, and that the statute is in fact being arbitrarily applied.

---

**2.** Article 1, § 23 states,

Section 23. The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

Constitutional challenges to mandatory retirement plans like the one here are not new. As one authority has recently remarked,

> The argument that a public employee may not constitutionally be forced to retire on the basis of his age has been almost uniformly rejected by the courts, . . . . Mandatory retirement plans or programs based solely on age considerations have thus been upheld in cases involving high school teachers and university professors and other educational employees, state court judges, state and municipal law enforcement officers and municipal firemen, and certain other public employees, including a state employed psychiatrist, a county hospital employee, a member of a county public defender's staff, a municipal park department employee, and sanitation employees. (footnotes omitted)

Annot., 81 A.L.R.3d 811, 816 (1977). The first definitive ruling by the U.S. Supreme Court regarding the constitutionality of compulsory retirement schemes appeared in the decision of *Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520.[3] There, the plaintiff, an officer of the Uniformed Branch of the Massachusetts State Police, brought an action alleging that a state statute requiring uniformed state policemen to retire at age fifty violated the equal protection clause of the fourteenth amendment. In determining the appropriate standard of review, the Court held that the strict scrutiny test would not be used because the right to governmental employment per se was not a fundamental right nor was the class of uniformed state police officers over fifty a suspect class for purposes of equal protection analysis. In making the latter determination, the Court noted,

> While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a "history of purposeful unequal treatment" or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities.

427 U.S. at 313, 96 S.Ct. at 2567.

After *Murgia*, both federal and state courts have held that the right to government employment is not fundamental and that age is not a suspect classification. *See, e. g., Trafelet v. Thompson* (7th Cir. 1979), 594 F.2d 623; *Klain v. Pennsylvania State University* (M.D.Pa.1977), 434 F.Supp. 571, *aff'd* (3d Cir. 1978), 577 F.2d 726; *Hawkins v. Preisser* (Iowa 1978), 264 N.W.2d 726. *See also Hicklin v. Orbeck* (Alaska 1977), 565 P.2d 159, *rev'd on other grounds* (1978), 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (right to work not fundamental, citing *Murgia* ).[4]

The *Murgia* Court then proceeded to test the legislation under the rational basis inquiry. It noted that according to this second standard of its traditional two tier approach, the constitutional review is somewhat relaxed, the statute is presumptively valid, and the law will not be struck down

---

**3.** Prior to *Murgia,* the Supreme Court had undertaken several cursory examinations of this issue. *Cannon v. Guste* (1975), 423 U.S. 918, 96 L.Ed.2d 257, 46 L.Ed.2d 245 *summarily aff'g* (E.D.La.1975), 11 FEP 675 (upholding Louisiana statute mandating retirement at age 65 for certain state employees); *Weisbrod v. Lynn* (1975), 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 *summarily aff'g* (D.D.C.1974), 383 F.Supp. 933 (upholding federal statute requiring certain civil service employees to retire at age 70); *McIlvaine v. Pennsylvania State Police* (1974), 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 *dismissing for want of substantial federal question* (1973), 454 Pa. 129, 309 A.2d 801 (upholding Pennsylvania law on compulsory retirement

of state police at age 60). In light of *Weisbrod* and *McIlvaine,* the Second Circuit affirmed the dismissal of a complaint for lack of a substantial federal question in *Rubino v. Ghezzi* (2d Cir. 1975), 512 F.2d 431, *cert. denied* (1975), 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 wherein the plaintiffs challenged a New York law and the state constitution which imposed a mandatory retirement age of 70 on certain state judges.

**4.** Appellant cites no case authority supporting his contention that a compulsory retirement plan impinges a fundamental right to life, and we have found none so holding.

as long as the classification is rationally related to furthering a legitimate state interest. *Accord, State ex rel. Thrasher v. Hayes* (1978), Ind.App., 378 N.E.2d 924; *Indiana High School Athletic Association v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66. Using these guidelines, the Court found no constitutional infirmity in the law, concluding,

> In this case, the Massachusetts statute clearly meets the requirements of the Equal Protection Clause, for the State's classification rationally furthers the purpose identified by the State: Through mandatory retirement at age 50, the legislature seeks to protect the public by assuring physical preparedness of its uniformed police. Since physical ability generally declines with age, mandatory retirement at 50 serves to remove from police service those whose fitness for uniformed work presumptively has diminished with age. This clearly is rationally related to the State's objective.

427 U.S. at 314–15, 96 S.Ct. at 2567–2568 (footnotes omitted).

Subsequent to *Murgia*, our federal and state courts have applied the rational basis test in the face of equal protection attacks on mandatory retirement plans and have been nearly unanimous in upholding these plans' validity.[5] *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (federal statute requiring employees cover-

ed by the Foreign Service retirement and disability system to retire at age sixty); *Trafelet v. Thompson* (7th Cir. 1979), 594 F.2d 623 (Illinois statute mandating retirement of state judges at age seventy); *Palmer v. Ticcione* (2d Cir. 1978), 576 F.2d 459, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (New York school board policy compulsorily retiring teachers at age seventy); *Johnson v. Lefkowitz* (2d Cir. 1977), 566 F.2d 866, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (New York law providing for mandatory retirement of tenured civil service employees at age seventy); *Issarescu v. Cleland* (D.R.I.1979), 465 F.Supp. 657 (federal statute making seventy the mandatory retirement age for civil service workers); *Klain v. Pennsylvania State University* (M.D.Pa. 1977), 434 F.Supp. 571, *aff'd* (3d Cir. 1978), 577 F.2d 726 (Pennsylvania university policy requiring all school faculty and staff to retire at age sixty-five); *American Federation of Teachers College Guild, Local 1521 v. Los Angeles Community College District Board of Trustees* (1976), 63 Cal.App.3d 800, 134 Cal.Rptr. 111 (California community college board rule mandating employees to retire at age sixty-five); *Fulton County School District v. Sanders* (1978), 242 Ga. 298, 248 S.E.2d 670 (Georgia statute establishing compulsory retirement scheme for certain teachers at age sixty-five); *Hawkins v. Preisser* (Iowa 1978), 264 N.W.2d 726 (Iowa statutes permitting state agency to

---

5. The only post-*Murgia* decision which our research revealed to have held a mandatory retirement plan in violation of the equal protection guarantee is *Kuhar v. Greensburg-Salem School District* (W.D.Pa.1979), 466 F.Supp. 806. However, the unique facts in that case played an important role in the court's holding. In *Kuhar,* a Pennsylvania school district had adopted a policy under which employees had to retire at the end of the school year in which they reached the age of 65. The school year was to terminate every June 30. On April 6, 1978, the President of the United States signed into law the 1978 amendments to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, which raised the minimum mandatory retirement age for state and municipal employees, among others, from age 65 to age 70. However, the new amendments were not to take effect until January 1, 1979. The plaintiff, an assistant principal employed by the

school district, turned 65 on August 27, 1977 and was informed that he would be required to retire as of June 30, 1978. Because of the statutory amendments and due to the fact that a new school year was to begin on July 1, 1978, plaintiff was the last individual whom the school district sought to release under its age 65 retirement plan. Finding this policy to have been immediately "rendered obsolete" and "aborted" when the congressional amendments were passed on April 6, 1978, the court found the policy to have no rational relationship to the legitimate state interest of providing the school children in the district with the best education at the most affordable cost. The case at bar presents no such conflict with federal law. Another case seemingly at variance with *Murgia; Gault v. Garrison* (7th Cir. 1977), 569 F.2d 993, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633, will be discussed, *infra.*

retire employees at age sixty-five); *O'Neil v. Baine* (Mo.1978), 568 S.W.2d 761 (Missouri law requiring magistrate and probate judges to retire at age seventy); *State Division of Human Rights v. State* (1978), 62 A.D.2d 617, 406 N.Y.S.2d 401 (New York legislation mandating retirement for state police at age fifty-five); *Gardner v. Borough of Sayre* (1977), 28 Pa.Cmwlth. 130, 367 A.2d 814 (Pennsylvania local ordinance providing for compulsory retirement of police at age sixty); *Fazekas v. University of Houston* (Tex.Civ.App.1978), 565 S.W.2d 299, *dismissed for want of substantial federal question* (1979), 440 U.S. 952, 99 S.Ct. 1487, 59 L.Ed.2d 765 (Texas university regulation compelling faculty to retire at age sixty-five); *King v. Board of Trustees* (Tex. Civ.App.1977), 555 S.W.2d 925 (Texas statute allowing public school district to adopt policy requiring employees to retire at ages sixty-four, sixty-three, or sixty-two, depending on the school term in question).

Parker relies heavily on *Gault v. Garrison* (7th Cir. 1977), 569 F.2d 993, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633, to urge that it was improper to dispose of his case on a motion to dismiss. In *Gault* an Illinois high school teacher attempted to challenge a school board's policy mandating retirement at the end of the school year in which a teacher turned sixty-five. The district court granted a motion to dismiss and the Court of Appeals reversed noting that there was no evidence in the record, as there had been in *Murgia,* establishing a valid basis for the classification. The court assumed the basis was to remove unfit teachers and indicated that in its view there was no apparent correlation between the mental fitness at issue and age sixty-five.

However, the following year the Second Circuit refused to follow *Gault* in *Palmer v. Ticcione* (2d Cir. 1978), 576 F.2d 459, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633, noting that in addition to removing unfit teachers the state could desire to attract and encourage young people to become and remain teachers by affording job openings and advancement opportunities, or it could desire to provide predictability and ease in establishing and administering pension plans. The court thought either of these reasons supplied a rational basis. *See also Issarescu v. Cleland* (D.R.I. 1979), 465 F.Supp. 657; *O'Neil v. Baine* (Mo.1978), 568 S.W.2d 761 criticizing *Gault.*

▮ It is generally accepted in equal protection claims, as in other areas of constitutional attack, that a statute is clothed with the presumption of constitutionality and the party attacking the statute bears the burden of establishing that no rational basis for the classification exists. Thus, our courts have often observed in applying the rational basis standard that a statutory classification will not be set aside if any state of facts may reasonably be conceived to justify it. *See, e. g., Allen v. Pavach* (1975), 263 Ind. 574, 335 N.E.2d 219; *Bd. of Commrs. v. Kokomo City Plan Comm'n.* (1975), 263 Ind. 282, 330 N.E.2d 92. While such a basis may be demonstrated to the court, it is sufficient if the court can perceive a rational basis. 335 N.E.2d at 222; *see also Baldwin v. State* (1923), 194 Ind. 303, 141 N.E. 343.

▮ Here the retirement provisions are applicable to the entire class of state employees governed by the State Personnel Act, IC 4–15–2–1 et seq. As such its purposes include the legislature's desire to offer the opportunity for employment and advancement to young persons, as well as an attempt to insure the physical and mental vigor of its employees while avoiding embarrassing and time consuming hearings to establish failed mental or physical health as a basis for retirement. The statute rests upon a rational basis. *See, e. g., Johnson v. Lefkowitz* (2d Cir. 1977), 566 F.2d 866, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633; *Issarescu v. Cleland* (D.R.I. 1979), 465 F.Supp. 657.[6]

There is, however, another aspect of Parker's equal protection argument which mer-

---

**6.** Thus, even if the statute is to some extent both overinclusive and underinclusive, perfec-

tion is not required. *Vance v. Bradley* (1979), 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171.

its attention. Compulsory retirement under IC 4–15–8–2 (1976) can be deferred pursuant to IC 4–15–8–5 (1976) which provides,

Sec. 5. (Postponement Granted) No postponement of retirement shall be granted for any employee that is seventy [70] years of age or older unless the employee and the appointing authority or his designee of the department in which the employee is working establish that the retention of such employee is necessary for the efficient operation of the department and that the employee is fully competent, mentally and physically, to perform the requirements of his job.[7]

Parker asserts that he should have been allowed to introduce evidence showing that the mandatory retirement scheme was in fact being arbitrarily applied. Specifically, he contended in his memorandum in opposition to the motion to dismiss that of those employees who had been given an extension under the above section, there had been no correlation between merit scores and retention. Instead, he alleged that the sole criterion for postponed retirement was friendship and "personal closeness" with the appointing authority. Parker asserts that continued employment beyond the age of seventy depended on the whim of the employer so that the retirement statute was being applied unequally.

■ It has long been the rule that even though legislation does not facially deny equal protection, it may present a constitutional issue if it has been unequally or discriminatorily enforced. *East Coast Lumber Terminal, Inc. v. Town of Babylon* (2d Cir. 1949), 174 F.2d 106; *Franklin v. White Egret Condominium, Inc.* (Fla.Dist.Ct.App. 1977), 358 So.2d 1084. As stated by the Supreme Court in *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220,

Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

---

7. The State Personnel Board has adopted rules to implement this statutory provision for deferred retirement. The procedure for obtaining such a postponement from the Board is outlined in 30 IAC 1–17–3 (1979), as follows,

Sec. 3. Deferment of Compulsory Retirement. Those employees who have been notified of their compulsory retirement date may petition the board for, and the Board may grant, deferment of the date subject to the following provisions:

The employee and his appointing authority each shall request the deferment in writing, stating the length of the deferment requested and reasons therefore [sic].

Any deferment granted shall be only for a reasonable time, and not to exceed one (1) year.

Successive deferments may be granted upon repetition. However, such additional deferments may only be granted upon evidence submitted by the appointing authority that active recruitment efforts have been made, but that a replacement is not available, and stating reasons why promotion from within the agency is not feasible.

Each petition shall establish that the purpose of the deferment is in the interest of maintaining departmental efficiency.

The content of any petition for deferment is prescribed by 30 IAC 1–17–4 (1979),

Sec. 4. Petition for Deferment of Retirement Date. (A) Each petition for deferment of the compulsory retirement date shall consist of the following:

(1) A health certificate from a physician stating that the petitioning employee is in good physical and mental health and completely capable of fulfilling the duties and responsibilities of his classification.

(2) Copies of his three most recent performance ratings or as many as available but not more than three.

(3) A statement from the appointing authority, stipulating why the retention of the petitioning employee is necessary for the efficient operation of the department.

(B) The petition for deferment shall be filed seventy (70) days prior to the compulsory retirement date.

(C) The notice requirement will not be interrupted by the submission of a petition for deferment.

Appellant has indicated that he requested postponement of his retirement but that the effort was unavailing because the Lake County Department of Public Welfare, John D. Kelley, Director, refused to join in that request. Such concurrence by the appointing authority is required by IC 4–15–8–5 (1976) and the corresponding rules in order for compulsory retirement to be suspended.

118 U.S. at 373–74, 6 S.Ct. at 1073. *See also Williams v. Illinois* (1970), 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586; *Griffin v. Illinois* (1956), 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. Indiana courts have expressed their agreement. *Park Hill Development Co. v. City of Evansville* (1921), 190 Ind. 432, 130 N.E. 645; *Owens v. State ex rel. Van Natta* (1978), Ind.App., 382 N.E.2d 1312.

The decision in *Nelson v. Miwa* (1976), 56 Haw. 601, 546 P.2d 1005 is relevant. There, a college professor brought suit challenging the retirement policy adopted by the Board of Regents of his employer, the University of Hawaii. According to the policy, in order for a faculty member age sixty-five or older to remain teaching, it had to be demonstrated that his services were needed by the school and that he was more competent for the position than any other person available. The procedure began with the formation of a committee which would conduct a search for a replacement when a faculty member approached the age of sixty-five and desired reappointment. Upon finding a qualified applicant, the question of superior competence would be submitted to other members of the faculty department involved who would vote by secret ballot. The results of this vote would then be revealed to the chancellor of the college, who, however, was not bound by the outcome. He would then make a determination as to whether the university needed the personal services of the retiring professor. If he decided to recommend reappointment, only then would the Board of Regents consider the question of continued employment, in which case it had the final say. The plaintiff in *Nelson* received a favorable vote from his peers, but the college chancellor refused to make the necessary recommendation due to his opinion that the plaintiff's services were not essential to the university.

In affirming a trial court determination that the retirement policy was unconstitutional on equal protection grounds, the Supreme Court of Hawaii observed that the chancellor's decision not to recommend the plaintiff for reappointment was strongly influenced by the chancellor's belief that

regardless of the Board's policy specifically permitting faculty members over sixty-five to remain if the requisite criteria were satisfied, professors *still had* to retire once they reached that age. However, in the past, professors over the age of sixty-five had been reappointed on at least two other occasions. After noting this disparity, the court concluded,

> In short, we fail to see the logic in a system which provides an elaborate procedure for determining that a person is the most qualified individual for the job but, after so determining, refuses to continue to employ him solely because he has reached the age of sixty-five years.

*Id.* at 612, 546 P.2d at 1013.

In *Klain v. Pennsylvania State University* (M.D.Pa.1977), 434 F.Supp. 571, *aff'd* (3d Cir. 1978), 577 F.2d 726, the court rejected an equal protection challenge to a state university policy requiring all school faculty and staff to retire at the age of sixty-five. The policy allowed exemptions from mandatory retirement provided there were "unusual circumstances." The court noted in passing on the plan's constitutionality,

> Plaintiff in this case did receive one extension and *based on the record before us* [case decided on defendant's motion for summary judgment; numerous affidavits were filed] there is no reason to believe the refusal to further extend his employment was based on constitutionally impermissible grounds or was otherwise arbitrary and capricious.

*Id.* at 579. (emphasis added).

Since the present case was disposed of below on a motion to dismiss for failure to state a claim, the record before us is not as complete as that in *Klain,* and we cannot as easily reach the same conclusion. It is conceivable that Parker could present factual evidence at trial demonstrating that the compulsory retirement statute was administered by state officials in a selective and discriminatory manner. We will not speculate on his proof but hold that it does not appear to a certainty that he would not be entitled to relief under any set of facts.

Thus, a remand, only on this aspect of the equal protection issue, is necessary in order for appellant to have the opportunity to substantiate his allegations. Of course, it should be remembered that Parker bears the burden of proof. *Allen v. Pavach* (1975), 263 Ind. 574, 335 N.E.2d 219; *Uhl v. Liter's Quarry of Indiana, Inc.* (1979), Ind. App., 384 N.E.2d 1099.

The last assertion of error we will address concerns Parker's contention that the mandatory retirement law violates the due process clause of the fourteenth amendment and article 1, § 12 of the Indiana Constitution.[8] Again, we will treat these guarantees as the same. Parker's argument centers on the lack of a hearing prior to mandatory retirement and the existence of an impermissible "irrebuttable presumption" that individuals, such as appellant, are unfit for continued employment upon reaching age seventy. In dismissing the complaint, the trial court determined that Parker possessed no "property interest" worthy of due process protection. He asserts that he should have been given an opportunity to introduce evidence showing that a property interest was involved and suggesting the possibility that certain promises were made to him by the appellees or their agents.

It is fundamental that before a procedural due process claim can be invoked by a party, he must be able to establish that he has been deprived of a liberty or property interest within the ambit of the fourteenth amendment. *Perry v. Sindermann* (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Even assuming that Parker could demonstrate the existence of such an interest,[9] it has been held that the doctrine of irrebuttable presumptions is coextensive with that of equal protection so that once it has been determined that the statutory classification is rationally based, it will not be struck down on the ground that it embodies an unconstitutional presumption. *See, e. g., Trafelet v. Thompson* (7th Cir. 1979), 594 F.2d 623 (questioning the current status of the irrebuttable presumption doctrine); *O'Neil v. Baine* (Mo.1978), 568 S.W.2d 761. Likewise, appellant's claim that he was entitled to a hearing before being retired has met with judicial disapproval. As it was stated in *Johnson v. Lefkowitz* (2d Cir. 1977), 566 F.2d 866, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633,

> Apart from his substantive attacks on the retirement provision, Johnson alleges that he was deprived of his tenured civil service position without procedural due process. He claims that he was entitled to a hearing either at the time of his mandatory retirement or at the time his final extension was refused. Appellee suggests that Johnson's due process argument is wholly misguided since his termination affected neither a protected property or liberty interest. We need not, however, reach the state's argument. Assuming *arguendo* that Johnson's dismissal affected his property or liberty, a determination of constitutionally mandated procedures requires that the interests of the individual in being afforded such safeguards be balanced against the burden to the state in conducting them. It is clear to us that the administrative cost to the state of providing each retiree with a hearing would be enormous, and by far outweigh the hardship to the individual.

---

8. Article 1, § 12 provides,

  Section 12. All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

9. A proposition which is doubtful at best, unless special circumstances are shown, in light of considerable case authority denying the presence of a property interest on the part of a public employee who is mandatorily retired, even though there are provisions for the postponement of that retirement. *See, e. g., Klain v. Pennsylvania State University* (M.D.Pa. 1977), 434 F.Supp. 571, *aff'd* (3d Cir. 1978), 577 F.2d 726; *Jordan v. Metropolitan Sanitary District* (1958), 15 Ill.2d 369, 155 N.E.2d 297; *Monnier v. Todd County Independent School District* (1976), S.D., 245 N.W.2d 503.

*Id.* at 869 (footnote omitted). *Accord, Palmer v. Ticcione* (2d Cir. 1978), 576 F.2d 459, *cert. denied* (1979), 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633. We agree with the Second Circuit's evaluation.

The judgment is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

STATON and HOFFMAN, JJ., concur.