Mr. R.H. Martin Secretary Board of Commissioners of Pilots of the State of New York
This is in response to your request for an opinion as to whether the Board of Commissioners of Pilots may decline to renew the license of a Long Island Sound-Block Island Sound pilot, who had not reached his sixtieth birthday on January 1, 1972, solely on the ground that he has now reached the age of sixty-five.
Since January 1, 1972, all foreign vessels and all American vessels under register transiting the New York State waters of Long Island and Block Island Sounds have been required to take on board a pilot licensed by the State Board of Commissioners of Pilots (Navigation Law, § 89-b; L 1971, ch 942). Correspondingly, the Board was authorized to license as many Long Island-Block Island Sound pilots as it deemed necessary to pilot ships transiting such waters (Navigation Law, § 91-b; L 1971, ch 942). At the same time, the Legislature enacted a "grandfather clause" which required that all pilots, who had been actively engaged for two years in piloting vessels through the specified waters, be licensed as Long Island-Block Island Sound pilots if found by the Board to be qualified in accordance with their regulations in effect on March 17, 1971, "except that any person who is found to be so qualified who had reached his sixtieth birthday prior to the effective date of this act shall be eligible to renew his license until age seventy". (Navigation Law, § 91-b; L 1971, ch 942.)
Apparently, the Legislature was taking cognizance of the Board's regulations which provide: "Effective on and after June 1, 1970, the mandatory retirement age of 65 years shall apply to all pilots licensed by the board." (21 NYCRR §§ 52.8 (c), 52.9 (c).)
Clearly, under the wording of the "grandfather clause", quoted above, a pilot who had not reached his sixtieth birthday on January 1, 1972, the effective date of the act, is not covered by the clause and thus is subject to the regulation mandating retirement at 65.
It is also clear that the Board's regulations creating a mandatory retirement age of 65 for pilots are authorized by Navigation Law, §95, which grants the Board broad power to promulgate regulations concerning the licensing of pilots.
Nor does the mandatory retirement age of 65 for pilots violate the provisions of the State Human Rights Law (Executive Law, §§ 290, etseq.) pursuant to which the opportunity to obtain employment without discrimination because of age is declared to be a civil right (Executive Law, § 291 [1]). Although the Board of Commissioners of Pilots is not an "employer" within the meaning of the State Human Rights Law, it appears that the Board is subject to such law by virtue of its being a "licensing agency" (Executive Law, § 296).
Under Executive Law, § 296, it is an unlawful discriminatory practice for a licensing agency to refuse to license an individual because of the individual's age but only if the individual is between the ages of 18 and 65 (American Airlines v State Commission For Human Rights, 29 A.D.2d 178
[1st Dept, 1968]; 1973 Op Atty Gen 117). Since the regulation of the Board does not require the manadatory retirement of a pilot until age 65, the regulation does not violate section 296.
While the Federal Age Discrimination in Employment Act of 1967 (29 USCA §§ 621,et seq.) prohibits age discrimination against employees aged 40 to 70 (29 USCA §§ 623, 631), the Board of Commissioners of Pilots is not subject to such Act since, by its terms, the Act only applies to discriminatory practices by employers, employment agencies and labor organizations (29 USCA § 623), which terms do not appear to include the State Board in its licensing capacity (29 USCA § 630). Nor do the provisions of Title VII of the Federal Civil Rights Act of 1964 (42 USCA §§ 2000e, et seq.) apply to the mandatory retirement age of pilots licensed by the Board since Title VII prohibits discrimination in employment on the basis of race, color, religion, sex or national origin only and does not include age as a factor (42 USCA § 2000e-2).
Furthermore, it does not appear that the mandatory retirement policy of the Board violates the equal protection clause of theFourteenth
Amendment of the United States Constitution or the equal protection clause of the New York State Constitution (Art I, § 11). In upholding the mandatory retirement age of 55 for the Division of State Police against an equal protection challenge, the Court in State Division ofHuman Rights (Kozlowski) v State of New York, 62 A.D.2d 617 (4th Dept, 1978) app dsmd 46 N.Y.2d 939 (1979), found the decision of the Supreme Court in Massachusetts Bd. of Retirement v Murgia (427 U.S. 307 [1976]) to be controlling. In Murgia, the Supreme Court applied the traditional "rational basis" test and held that a Massachusetts statute which provided for a mandatory retirement age of 50 for uniformed State Police officers was rationally related to a legitimate State purpose. The Court relied in part on the requirement that uniformed officers pass a comprehensive physical examination biennially through age 40 and an even more rigorous examination annually between the ages of 40 and 50. The Court considered this requirement as evidence that the Massachusetts legislature was seeking to protect the public by assuring physical preparedness of its uniformed police and that since physical ability generally declines with age, mandatory retirement at 50 serves to remove from police service those whose fitness has diminished with age (see, also, Vance v Bradley, 440 U.S. 93 [1979], upholding the forced retirement at age 60 of federal employees in the Foreign Service).
The reasoning expressed in the decisions cited above is equally applicable here. As stated in your request, and in the materials attached to it, the Board is concerned with the safety of the pilots whom it licenses and the prevention of marine accidents, which could cause the loss of lives and property and damage to the ecology. As you point out, pilots are required to board and leave large ocean-going vessels and on many occasions must pilot a vessel over 100 miles, during which time the pilot must remain on duty on the bridge of the ship, under all conditions of weather and visibility. It appears that by a mandatory retirement age of 65 for pilots, the Board is seeking to avert marine accidents by assuring that the pilots whom it licenses are physically able to perform the strenuous tasks required of them. Consequently, the mandatory retirement age appears rationally related to a legitimate State purpose. We would only suggest that an additional requirement of a periodic physical examination would enhance the argument that the retirement age is rationally related to the purpose of assuring physical fitness of licensees.
Therefore, we conclude that the Board of Commissioners of Pilots may decline to renew the license of a Long Island Sound-Block Island Sound pilot, who has not reached his sixtieth birthday on January 1, 1972, solely on the ground that he has now reached age sixty-five.