**Donald D. CAMPBELL, Plaintiff,**

v.

**William G. CONNELIE, as Superintendent of the Division of New York State Police, New York State Policemen's and Firemen's Retirement System, and The State of New York, Defendants.**

No. 81–CV–872.

United States District Court,
N. D. New York.

May 15, 1982.

276

Hinman, Straub, Pigors, & Manning, P. C., Albany, N. Y., for plaintiff; Peter L. Rupert, Albany, N. Y., of counsel.

Robert Abrams, Atty. Gen., for the State of N. Y., Albany, N. Y., for defendants; Lawrence L. Doolittle, Asst. Atty. Gen., Albany, N. Y., of counsel.

MEMORANDUM–DECISION and ORDER

MINER, District Judge.

## I.

■ This is an action for compensatory damages and injunctive relief under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.* Federal jurisdiction is founded upon 29 U.S.C. § 626(c).[1] Before this Court is defendants' motion for summary judgment, Fed.R.Civ.P. 56, this Court, upon notice to the parties, having converted a motion to dismiss to one for summary judgment by order dated January 29, 1982. Fed.R.Civ.P. 12(b).

## II.

Plaintiff Campbell brings this action against William G. Connelie, Superintendent of the Division of New York State Police, in his official capacity, the New York State Policemen's and Firemen's Retirement System, and the State of New York, as a result of plaintiff's mandatory retirement at age fifty-five (55) years from his position as a New York State Trooper pursuant to section 381–b(e) of the New York Retirement and Social Security Law.[2] Plaintiff alleges that section 381–b(e) is in violation of 29 U.S.C. § 623(a)(1) and 631.[3]

## III.

The defendants argue that summary judgment should be granted for several reasons. First, defendants claim that age is a bona fide occupational qualification ("BFOQ") pursuant to 29 U.S.C. § 623(f)(1).[4] The Supreme Court, in *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), held that age, as a qualification for performing the duties of a trooper, was a bona fide occupational qualification, reasonably necessary to normal operation and function of the Massachusetts State Police and the performance of duties of a state police officer. Moreover, New York state and federal courts have determined that this holding is applicable to the New York State Police, and that the age 55 retirement of members of the New York State Police is a bona fide occupational qualification. *Bouffier v. Frank*, 389 F.Supp. 502 (E.D.N.Y.1975); *State Division of Human Rights v. New York*, 62 A.D.2d 617, 406 N.Y.S.2d 401 (4th Dep't 1978), *appeal dismissed*, 46 N.Y.2d 939, 415 N.Y.S.2d 1028, 386 N.E.2d 1340.

Second, defendants contend that the plaintiff, having voluntarily elected to participate in the retirement plan provided in New York Retirement and Social Security

---

1. Section 626 of Title 29, United States Code, provides in part:

   "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter . . ."

   The complaint here failed to cite this jurisdictional section; however, this omission does not defeat jurisdiction, since the facts alleged in the complaint satisfy the jurisdictional requirements of this section. *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179 (5th Cir. 1980); *New York State Waterways Association, Inc. v. Diamond*, 469 F.2d 419, 4?1 (2d Cir. 1972).

2. N.Y.Retire. & Soc.Sec.Law § 381–b(e) provides that a member of the State Police "shall be retired on December thirty-first of the year in which he attains fifty-five years of age . . ." Plaintiff's mandatory retirement commenced on December 31, 1981.

3. Section 623(a)(1) of Title 29, United States Code, provides:

   "(a) It shall be unlawful for an employer—

   (1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age . . ." 29 U.S.C. § 631 provides, "[t]he prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age . . ."

4. Section 623(f)(1) of Title 29, United States Code provides:

   (f) It shall not be unlawful for an employer, employment agency, or labor organization—

   (1) to take any action otherwise prohibited under subsections (a), (b), (c) or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age . . ."

Law § 381–b, a plan providing greater benefits than other retirement plans allowing plaintiff to retire as late as age 70, is estopped from maintaining this proceeding. *See Bouffier v. Frank, supra.* Third, defendants argue that this proceeding is barred by the tenth and eleventh amendments of the United States Constitution. The defendants in this proceeding are the State of New York itself, the New York State Policemen's and Firemen's Retirement System, a state agency, and the Superintendent of State Police, who is sued in his official capacity. Since the State of New York has not waived its sovereign immunity, defendants contend that this proceeding is barred by the eleventh amendment. Moreover, defendants take the position that Congress acted in violation of the tenth amendment in extending the coverage of the ADEA to states by including states within the definition of the term "employer." 29 U.S.C. § 630(b). *See National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) *EEOC v. State of Wyoming,* 514 F.Supp. 595 (D.Wyo.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1423, 71 L.Ed.2d 645 (1982). Finally, defendants assert that the New York State Retirement and Social Security Law § 381–b is a bona fide employee benefit plan existing prior to the 1978 amendment to the ADEA and not a "subterfuge" within the meaning of 29 U.S.C. § 623(f)(2).[5]

Plaintiff, on the other hand, maintains that the 1978 amendment to the ADEA, effective April 6, 1978,[6] eliminated the exception of a bona fide occupational qualification as a defense to the Act. More specifically, it is the position of plaintiff that the 1978 amendment expressly mandates that no employee retirement benefit plan "require or permit the involuntary retirement of any individual" solely because of age. 29 U.S.C. § 623(f)(2) (as amended). Plaintiff alleges that defendants' retirement benefit plan, based solely upon age as a criterion for retirement, is unlawful under the ADEA.

## IV.

█ This Court agrees with plaintiff that the 1978 amendment effectively overruled *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977),[7] in that no longer may bona fide employee retirement benefit plans, pursuant to § 623(f)(2), be based purely upon age. However, where, as here, it is undisputed that an employee was terminated solely because of age, an employer may still escape liability under the Act if he demonstrates the so-called "BFOQ" exception, which allows an employer to base retirement solely on age "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f)(1). *See E.E.O.C. v. County of Santa Barbara,* 666 F.2d 373, 375 (9th Cir. 1982).

█ In order to fit within the BFOQ statutory exception, the defendants must satisfy the two-pronged test formulated in *Usery v. Tamiami Trail Tours,* 531 F.2d 224, 236 (5th Cir. 1976). The burden is to demonstrate:

(1) that the BFOQ which it invokes is reasonably necessary to the essence of its business (here, the operation of an efficient state police for the protection of the public), and

**5.** Section 623(f)(2) of Title 29, United States Code, as amended, provides:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—
 (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit

plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual; or . . .

**6.** Pub.L. No. 95–256, § 2(b), 92 Stat. 189.

**7.** In *United Air Lines, supra,* the Court held that it was unnecessary for employers to show a business or economic purpose to justify plans that were instituted in good faith before the ADEA's 1967 passage.

(2) that the employer has reasonable cause, *i.e.*, a factual basis for believing that all persons within the class (here, persons over 55 years of age) would be unable to perform safely and efficiently the duties of the job involved, or that it is impossible or impractical to deal with persons over the age limit on an individualized basis. *See, e.g., Arritt v. Grisell,* 567 F.2d 1267, 1271 (4th Cir. 1977).

■ Here, the record is devoid of evidence to support a finding that the state's policy of forced retirement of state policemen at age 55 constitutes a BFOQ. There is no evidence that forced retirement at this age is reasonably necessary to the functioning of a proficient state police force. Nor is there evidence that substantially all persons over the age of 55 are unable to perform safely and efficiently the duties of the job or that it is impractical or impossible to deal with the physical and mental qualifications of persons over the age of 55 on an individualized basis. Absent such evidence, and since the BFOQ defense has been characterized as an "extremely narrow" exception, *Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977), the State here may not justify its policy on the basis of a BFOQ.[8]

In addition, this Court finds defendants' estoppel argument to be without merit. The crux of their argument is that, by choosing the greater benefit age 55 retirement plan over the lesser benefit age 70 retirement plan, plaintiff is estopped from maintaining this ADEA action. In *Bouffier v. Frank, supra,* 389 F.Supp. at 505, in a situation similar to the one at bar, the Court held that when two Nassau County police officers chose an age 59 retirement benefit plan over an age 62 retirement benefit plan, "both of them opted for the [former] and are bound by their own choice.

One who has had his cake, so to speak, may not claim that he is being discriminated against because he may not now eat it too."

■ However, this Court rejects such reasoning in favor of a waiver analysis. In essence, defendants are arguing that plaintiff, by opting for the early retirement plan, waived his federal statutory right to complain of age discrimination. Except for the *Bouffier* court, courts that have addressed this problem have held that before a court can find that a federal right has been waived, in applying the doctrine of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), it must be established that there was an intentional relinquishment of a known right or privilege. Courts give credence to every reasonable presumption against waiver of fundamental rights, and a court cannot presume acquiescence in the loss of a fundamental right. *Id.* at 464, 58 S.Ct. at 1023.

Moreover, in an analysis of Title VII of the Civil Rights Act of 1964, the Supreme Court in *Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), concluded that there could be no prospective waiver of an employee's rights under Title VII. Observing that an individual's right to equal employment opportunities represented a congressional command that each employee be free from discriminatory practices, the Court declared that waiver of such a right would result in defeating the congressional purpose behind Title VII. *Id.* at 51–52, 94 S.Ct. at 1021. Therefore, the Supreme Court concluded that an employee's rights under Title VII are not susceptible of prospective waiver.[9]

■ These principles are equally applicable here. Plaintiff made his decision to join the age 55 retirement benefit plan some-

---

8. The only evidence the State has presented here, concerning the BFOQ issue, are studies relating to the performance of New York City and New York City Housing Authority police personnel, studies that do not mention or relate to the state police, together with certain affidavits which recite in a conclusory manner that age diminishes skill and physical abilities.

9. The prohibiting language of the ADEA is similar to that of Title VII and, generally, courts have relied upon Title VII precedent in interpreting comparable ADEA provisions. *See e.g., Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979).

time prior to March 31, 1972. While the ADEA was enacted by Congress in 1967, it was not until 1974 that state and local governmental employees were included within the protection of the statute, and it was not until 1978 that the law was again amended to preclude the involuntary retirement of an individual pursuant to an established pension benefit or seniority system plan.

Under these circumstances, it cannot be said that plaintiff waived his rights under the ADEA by joining the age 55 retirement plan sometime in 1972. In that year, plaintiff had no right to challenge his chosen plan, which required him to retire at age 55, and therefore, there was no known right for him to relinquish when plaintiff decided to join the retirement system. Under federal standards, again, one may not relinquish intentionally an unknown right. *Johnson v. Zerbst, supra.* Cf. *McMann v. United Air Lines, Inc.*, 542 F.2d 217 (4th Cir. 1976).[10]

### V.

Since defendants cannot prevail on the above stated grounds, this Court may address defendants' constitutional contentions. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 582 n. 22, 99 S.Ct. 1355, 1364 n. 22, 59 L.Ed.2d 587 (1979); *Ashwander v. TVA*, 297 U.S. 288, 346, 56 S.Ct. 466, 482, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Here, the Court agrees with defendants that Congress, in extending the coverage of the ADEA to the states by amendment in 1974, has run afoul, at least in circumstances similar to the one at bar, of *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

In *National League of Cities*, the Supreme Court held that Congress, in the exercise of its power under the Commerce Clause, may not "impair the States' ability to function effectively in a federal system." 426 U.S. at 852, 96 S.Ct. at 2474, *quoting*

*Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 1795 n. 7, 44 L.Ed.2d 363 (1975).[11] Since *National League of Cities*, the Court has enunciated a three-prong test to be applied in evaluating congressional commerce power legislation: first, there must be a showing that the challenged legislation regulates states as states; second, the federal regulation must address matters that are indisputably attributes of state sovereignty; and third, it must be apparent that the states' compliance with the federal law would directly impair their ability "to structure integral operations in areas of traditional functions." *Id.* at 852, 96 S.Ct. at 2474. *United Transportation Union v. Long Island Rail Road Company*, —— U.S. ——, ——, 102 S.Ct. 1349, 1353, 71 L.Ed.2d 547 (1982). Here, it is clear that the key prong is the third one, and it is the opinion of this Court that the regulation here of police, historically a state function, would impair the states in their ability to "structure integral operations in areas of traditional functions." States, in our federal system, should be free and unfettered by federal governmental regulation in determining age limitations for police personnel service. Indeed, implementation here of such congressional legislation is very likely to endanger the "separate and independent existence" of the states as referred to in *National League of Cities v. Usery, supra,* at 851, 96 S.Ct. at 2474.

However, courts are divided over whether the ADEA was enacted under the Commerce Clause or under the fourteenth amendment. This Court follows the well-reasoned opinion of *EEOC v. State of Wyoming*, 514 F.Supp. 595 (D.Wyo.1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 1423, 71 L.Ed.2d 645 (1982) and concludes that the ADEA was enacted under the Commerce Clause. It is clear that *Arritt v. Grisell*, 567 F.2d 1267 (4th Cir. 1977), which held to the contrary, was decided prior to the Supreme

---

10. Where the Court placed no importance on the fact that plaintiff could have chosen not to join the retirement plan claimed to be in violation of the ADEA. *Id.* at 219 n.1.

11. In *National League of Cities v. Usery, supra*, the Court held that Congress could not impose the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, on state and local governments.

Court's decision of *Pennhurst v. State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).[12] *See Taylor v. Department of Fish and Game of the State of Montana*, 523 F.Supp. 514 (D.Mont.1981). *But see EEOC v. Elrod*, 50 U.S.L.W. 2594 (7th Cir. April 13, 1982).

Therefore, since the ADEA cannot, without being repugnant to the tenth amendment, be applied to the states in situations similar to the one at bar, defendants' motion for summary judgment is granted as a matter of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

It is so Ordered.

---

**12.** In *Pennhurst*, the Supreme Court concluded that courts "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *Id.* at 1539. The *Arritt* Court, in examining the legislative history of the ADEA, even though the ADEA was expressly promulgated under the Commerce Clause power, *see* H.R. Rep. No. 805, 90th Cong., 1st Sess. (1967), *U.S.Code Cong. and Admin.News*, [1967], p. 2213; H.R.Rep. No. 913, 93rd Cong. 2d Sess. (1974), *U.S.Code* and Admin.News [1974], p. 2811, concluded that in extending the ADEA to the states in 1974 Congress implicitly exercised its powers under § 5 of the fourteenth amendment. *Arritt v. Grisell, supra*, 567 F.2d at 1270 n. 11, 1271. *Accord Aaron v. Davis*, 424 F.Supp. 1238, 1241 (E.D.Ark.1976).