Clyde J. ARNOLD, Jr., et al., Plaintiffs,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

Charles R. NETHERTON, et
al., Plaintiffs,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

Civ. A. Nos. 85–2571, 86–2291.

United States District Court,
District of Columbia.

Dec. 9, 1986.

David R. Addis, Joseph E. Kolick, Jr. and Ellen M. Athas of Dickstein, Shapiro & Morin, Washington, D.C., for plaintiffs.

Stuart H. Newberger, Asst. U.S. Atty., and Anthony W. DuComb, U.S. Postal Service, Office of Labor Law, Washington, D.C., for defendant.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

Pending before the Court are defendant's motion to dismiss or for summary judgment, plaintiffs' cross motion for summary judgment and defendant's motion to strike. After thoroughly considering the record in this case, the Court holds that defendant's motion to dismiss must be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and that defendant's motion for summary judgment is denied, and that plaintiffs' cross motion for summary judgment is denied and that defendant's motion to strike is denied.

## II. BACKGROUND

This case arises out of plaintiffs' allegation that defendant's Career Path Policy ("CPP" or "Policy") violates the Age Discrimination in Employment Act ("ADEA" or "Act"), 29 U.S.C. § 633a. The Policy requires all Postal Inspectors who reach Level 23 to serve five years in one of thirteen major metropolitan areas. Under the CPP, vacancies in the major metropolitan areas are filled in one of three ways. Vacancies are first filled with voluntary lateral reassignments of Level 23 Postal Inspectors from non-major metropolitan areas. Vacancies are then filled with Level 21 Postal Inspectors within the Region and, if necessary, the Nation who nominate themselves for a promotion to a Level 23 Postal Inspector. Any remaining vacancies are finally filled by directed or involuntary transfers of the most senior Level 23 Postal Inspectors. See Defendant's Exhibit 1, Affidavit of A.R. Caggiano, Attachment 1 at 4. The CPP further provides that Postal Inspectors within five years of retirement who have served two years in a major metropolitan area and have relocated within the last two years as a result of reassignments are exempt from directed transfers. Finally, the CPP permits Postal Inspectors who have served five years in a major metropolitan area to transfer to any area they choose.

Plaintiffs' complaints arise from the fact that vacancies not filled by voluntary transfers or self-nomination transfers are filled by involuntary transfers of the most senior Postal Inspectors. As a result of this Policy, senior Postal Inspectors who received directed transfers to major metropolitan areas sought to enjoin their transfers because, among other things, the cost of living in major metropolitan areas is higher than in non-major metropolitan areas. The first challenge was brought by Charles Netherton in 1981. After filing an administrative complaint, Mr. Netherton filed suit in the Middle District of Florida seeking to enjoin his transfer from Orlando, Florida to

New York. *See* Complaint para. 5, *Netherton v. United States Postal Service,* Civ. No. 86–2291 (filed Sept. 28, 1982) (*"Netherton"*). The motion to enjoin was denied on October 1, 1982. A motion to dismiss by defendant was also denied and a stay was issued on June 17, 1983. Meanwhile, a number of administrative complaints, including Mr. Netherton's, were being processed. On August 30, 1983, a Final Agency Decision was issued, holding that the CPP did not violate the ADEA. The complainants appealed to the Equal Employment Opportunity Commission ("EEOC").

During the challenges to the CPP brought by the Postal Inspectors in Florida, a second group of Postal Inspectors filed similar administrative complaints. On October 12, 1984, a second Final Agency Decision held that the CPP did not violate the ADEA. That decision was also appealed to the EEOC.

Ultimately the EEOC denied the appeals. Subsequently the stay was lifted in the *Netherton* case and a similar case, *Arnold v. United States Postal Service,* Civ. No. 85–2571 (filed Aug. 13, 1985) (*"Arnold"*), was filed on August 13, 1985, in the District of Columbia. In an effort to consolidate the cases, a motion to transfer was filed by plaintiffs in the *Netherton* case on August 19, 1985. Defendant opposed the motion to transfer and on September 10, 1985, filed a motion for class certification. The *Netherton* case was transferred from the Middle District of Florida to this Court on August 8, 1986, and the lawsuits were consolidated on September 16, 1986, because of the common questions of law and fact and the identity of parties.

This consolidated lawsuit, filed by present and former Postal Inspectors, alleges that the Policy had a disparate impact on Postal Inspectors 40 years of age and over and discriminated against them because of their age. Specifically, plaintiffs challenge the directed transfers of the most senior Postal Inspectors as a violation of the ADEA. Plaintiffs contend that the Policy caused directed transfers of senior Postal Inspectors, caused some senior Postal Inspectors to resign and caused other senior Postal Inspectors to voluntarily transfer to major metropolitan areas of their choice to avoid directed transfers to less desirable major metropolitan areas. The Court must now decide the motions before it.

## III. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED MUST BE TREATED AS A MOTION FOR SUMMARY JUDGMENT BECAUSE MATTERS OUTSIDE THE PLEADINGS WERE PRESENTED TO AND WERE CONSIDERED BY THE COURT

If on a motion to dismiss for failure to state a claim upon which relief can be granted matters outside the pleadings are presented to and considered by the Court, the motion must be treated as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.Pro. 12(b). Defendant has submitted and the Court has considered with defendant's motion to dismiss affidavits and documentary evidence. Therefore, Rule 12(b) requires the Court to treat the motion to dismiss as a motion for summary judgment pursuant to Rule 56. The Court will first consider defendant's motion for summary judgment. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 (cross motions for summary judgment should be considered separately). If "there is [a] genuine issue as to any material fact [or defendant is not] entitled to judgment as a matter of law," defendant's motion must be denied. Fed.R.Civ. Proc. 56(c).

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE DISPARATE IMPACT ISSUE MUST BE DENIED BECAUSE PLAINTIFFS MAY PROVE A VIOLATION OF THE ADEA UNDER A THEORY OF DISPARATE IMPACT AND THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE POLICY HAD A DISPARATE IMPACT ON PLAINTIFFS

Defendant argues that it is entitled to summary judgment on two grounds—

that plaintiffs are not permitted to prove a violation of the ADEA by establishing that the Policy had a disparate impact on plaintiffs and, even if disparate impact analysis is permissible, that the CPP did not have a disparate impact on plaintiffs. For the reasons that follow, the Court holds that plaintiffs may prove a violation of the ADEA by establishing a disparate impact and that there is a genuine issue of material fact as to whether the CPP had a disparate impact on plaintiffs.

A. *Because the Remedial Language and Purpose of Title VII and the ADEA Are Identical and the Rationale of Griggs v. Duke Power Co., the Case in Which the Supreme Court Formulated the Disparate Impact Analysis Under Title VII, Mandates the Application of the Disparate Impact Analysis Under the ADEA, This Court Must Hold, As Every Court That Has Addressed the Issue Has Held, That the Disparate Impact Analysis Developed Under Title VII Is Also Applicable Under the ADEA*

Plaintiffs complain that the CPP violates the ADEA because it has a disparate impact on Postal Inspectors 40 years of age and over. *See* Complaint para. 5, *Netherton v. United States Postal Service,* Civ. No. 86–2291 (filed Sept. 28, 1982); Complaint para. 27, *Arnold v. United States Postal Service,* Civ. No. 85–2571 (filed Aug. 13, 1985). The final agency decisions, however, held that the disparate impact analysis formulated in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), a race discrimination case under Title VII, is not applicable to cases brought pursuant to the ADEA. *Arnold* Complaint, Exhibit 2 at 7–13 & Exhibit 5 at 5–12. This Court disagrees. Because the remedial language and purpose of Title VII and the ADEA are identical and the rationale of *Griggs v. Duke Power Co.,* mandates the application of the disparate impact analysis under the ADEA, this Court agrees with every other court that has addressed the issue that the disparate impact analysis developed under Title VII

is applicable to cases brought under the ADEA.

1. *The Rationale of Griggs v. Duke Power Company, the Case in Which the Supreme Court Formulated the Disparate Impact Analysis Under Title VII, Mandates the Application of the Disparate Impact Analysis Under the ADEA*

Prior to the enactment of Title VII, applicants seeking a job in any department other than the Labor Department of the Duke Power Company had to have a high school diploma and receive a passing grade on two aptitude tests. The result was that blacks were hired only in the Labor Department. The highest paying jobs in the Labor Department paid less than the lowest paying jobs in the other departments. Beginning in 1965, the company also required all employees who desired to transfer out of the Labor Department to have a high school diploma and to pass the two aptitude tests. Although these requirements applied equally to blacks and whites, they adversely affected a disproportionate number of blacks. There was no showing that the company had an invidious intent to discriminate against blacks in adopting these requirements. Nevertheless, the Supreme Court held that the requirements were invalid under Title VII because they had a disparate impact on blacks and were not shown to be related to job performance. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

The Supreme Court in *Griggs* formulated the disparate impact analysis under section 703(a)(2) of Title VII, which states:

It shall be an unlawful employment practice for an employer ... to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

The Supreme Court stated that "[t]he objective of Congress in the enactment of Title VII is *plain from the language of the statute.* It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." *Griggs,* 401 U.S. at 429–30, 91 S.Ct. at 852–53 (emphasis added); *see also Connecticut v. Teal,* 457 U.S. 440, 447, 102 S.Ct. 2525, 2530–31, 73 L.Ed.2d 130 (1982) (explaining the basis for the Supreme Court's formulation of the disparate impact analysis in *Griggs*). The Court concluded that Congress intended that the statute require "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers *operate* invidiously...." *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853 (emphasis added). Thus, "Congress directed the thrust of the Act to the *consequences* of employment practices, not simply to the motivation" as further evidenced by the fact that Congress placed on the employer the burden of showing that a job requirement has a manifest relationship to the job. *Id.* at 432, 91 S.Ct. at 854 (emphasis in original).

2. *Because the Language and Purpose of the ADEA Are Identical to the Language and Purpose of Title VII, the Disparate Impact Analysis Under Title VII Is Applicable to the ADEA*

Section 623(a)(2) of the Age Discrimination in Employment Act states that:

It shall be unlawful for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....

The language of section 623(a)(2) of the ADEA is identical to the language of section 703(a)(2) of Title VII. *Compare* Section 703(a)(2) of Title VII *with* Section 623(a)(2) of the ADEA. The ADEA and Title VII are parallel statutes. *See Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). This Court

would have to strain its interpretation of the language in section 623(a)(2) to find that Congress did not intend it to operate in the same manner and to serve the same purposes as section 703(a)(2) of Title VII. Thus, the Court must find that Congress intended that the ADEA require "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers *operate* invidiously...." *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853 (emphasis added) (identifying the purpose behind section 703(a)(2) of Title VII); *see also* Section 621 of the ADEA, Congressional Findings and Purpose (Congress repeatedly stated that the purpose of the statute is to eliminate "arbitrary" age discrimination in employment).

Furthermore, section 623(f)(1) makes it lawful for age to be a job requirement if the employer can establish that it is a bona fide occupational qualification. *See, e.g., Western Airlines, Inc. v. Criswell,* 472 U.S. 400, 105 S.Ct. 2743, 2753–54, 86 L.Ed.2d 321 (1985); *Tuohy v. Ford Motor Co.,* 675 F.2d 842, 842–45 (6th Cir.1982) (burden on employer); *Mahoney v. Trabucco,* 574 F.Supp. 955, 957–58 (D.Mass.1983) (same), *rev'd on other grounds,* 738 F.2d 35 (1st Cir.), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Campbell v. Connelie,* 542 F.Supp. 275, 278–79 (N.D.N.Y.1982) (same). Therefore, as the Supreme Court noted in *Griggs* with respect to section 703(a)(2) of Title VII, this Court finds that "Congress directed the thrust of [the ADEA] to the *consequences* of employment practices, not simply to the motivation" as evidenced by the fact that Congress placed on the employer the burden of showing that an age requirement is a bona fide occupational qualification. *Cf. Griggs,* 401 U.S. at 432, 91 S.Ct. at 854 (emphasis in original). In short, the relevant parts of Title VII and the ADEA have the same language and purpose, and operate identically. Therefore, the Court must find that proving a violation using the disparate impact analysis must be permitted under the ADEA for the same reasons it is permitted under Title VII.

3. *Every Court To Address the Issue Has Applied the Disparate Impact Analysis in Cases Under the ADEA*

This Court is not alone in holding that proof of disparate impact may be used to establish a violation of the ADEA. The Second, Eighth and Ninth Circuits and the District Court for the Eastern District of Pennsylvania have expressly held that disparate impact analysis may be used in cases brought under the ADEA. *See EEOC v. Borden's Inc.*, 724 F.2d 1390, 1394–95 (9th Cir.1984) (the similar language, structure and purpose of Title VII and the ADEA compels the adoption of disparate impact analysis in cases seeking relief under the ADEA); *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 690 (8th Cir.1983) (explaining how to establish a *prima facie* case under the ADEA using a disparate impact theory); *Geller v. Markham*, 635 F.2d 1027, 1032 (2nd Cir.1980) (because the substantive prohibitions of the ADEA were adopted *in haec verba* from Title VII, the substantive rule permitting proof of disparate impact to establish a claim must also be adopted under the ADEA); *EEOC v. Westinghouse Electric Corp.*, 632 F.Supp. 343, 370 (E.D.Pa.1986) (following the Second, Eighth and Ninth Circuits); *EEOC v. Governor Mifflin School District and Governor Mifflin Education Association*, 623 F.Supp. 734, 738–41 (E.D.Pa.1985) (same); *See also* A. Ruzicho & L. Jacobs, Litigating Age Discrimination Cases § 2:06 (1986) (Callaghan). In addition, two other circuits, including the District of Columbia Circuit, have implied that the disparate impact theory is available under the ADEA. *See Schmid v. Frosch*, 680 F.2d 248, 249–50 (D.C.Cir.1982) (implicitly approving a disparate impact theory under the ADEA); *Allison v. Western Union Telegraph Co.*, 680 F.2d 1318, 1323 (11th Cir.1982) (holding that jury instructions adequately distinguished between disparate treatment and disparate impact). In short, every court that has confronted the issue has found that disparate impact analysis is applicable in cases brought under the ADEA. Therefore, based on the similarity between the language and purpose of section 623(a)(2) of the ADEA and section 703(a)(2) of Title VII, and persuasive case authority, the Court holds that a violation of the ADEA may be proven by establishing a disparate impact.

B. *Defendant's Motion For Summary Judgment on the Disparate Impact Issue Must Be Denied Because There Is a Genuine Issue of Material Fact as to Whether the Policy Had a Disparate Impact on Plaintiffs*

■ Defendant contends that even if disparate impact analysis may be used under the ADEA, the Policy did not have a disparate impact on plaintiffs. A disparate impact occurs when a facially neutral policy or practice falls more harshly on the protected class than on the unprotected class. *See Teal*, 457 U.S. at 455–56, 102 S.Ct. at 2535. Thus, if the CPP has a disproportionate impact or falls more harshly on Postal Inspectors 40 years of age and over than on those under 40 years of age, a disparate impact is established.

■ Defendant contends that the CPP did not have a disparate impact on plaintiffs. Of the directed transfers between 1981 and 1984, approximately 55% of the transferees were 40 years of age and over, and approximately 45% were under 40 years of age. *See* United States Postal Service's Motion to Dismiss, or in the Alternative, for Summary Judgment, Statement of Material Facts Not in Dispute paras. 10 & 11. Defendant contends these statistics show that the CPP equally affected Postal Inspectors over and under 40 years of age. Defendant also notes that of the 286 directed and voluntary transfers, approximately 34% of the transferees were 40 years of age and over, and approximately 66% were under 40 years of age. *See* United States Postal Service's Motion to Dismiss, or in the Alternative, for Summary Judgment, Statement of Material Facts Not in Dispute paras. 10 & 11. Defendant contends that these statistics show that the CPP actually fell more harshly on Postal Inspectors under 40 years of age.

Although the accuracy of defendant's statistics is not disputed, the Court finds that the statistics relied on by defendant do not establish that the CPP did not fall more harshly on Postal Inspectors 40 years of age and over. Defendant's statistics only compare the number of Postal Inspectors transferred that were 40 years of age and over to the number of transferees under 40 years of age. Defendant's statistics are inadequate because a disproportionate impact can only be measured in relation to the pool of Postal Inspectors eligible to be transferred. For example, as depicted by the chart below, assume there are 10 inspectors that are 40 years of age and over and 30 inspectors that are under 40 years of age, all eligible to be transferred under the CPP. If 10 inspectors that are 40 years of age and over and 10 inspectors that are under 40 years of age are transferred, exactly 50% of those transferred are 40 years of age and over. In this example, however, the CPP clearly falls more harshly on those 40 years of age and over because 100% of the eligible 40 years of age and over inspectors were transferred versus 33% of the eligible inspectors under 40 years of age.

|  | 40+ | Under 40 |
| --- | --- | --- |
| Eligible for Transfer ....... | 10 | 30 |
| Transferred ................ | 10 | 10 |
| % of Total Transferred ..... | 50% | 50% |
| % of Eligible Transferred... | 100% | 33% |

Because there is a genuine issue of fact as to whether the CPP falls more harshly on Postal Inspectors 40 years of age and over than on Postal Inspectors under 40 years of age, defendant is not entitled to summary judgment. Accordingly, absent evidence of the pool of Postal Inspectors eligible to be transferred, summary judgment must be denied.

The Court notes that were defendant to submit evidence regarding the pool of Postal Inspectors eligible to be transferred, summary judgment must still be denied. In measuring the full impact of the Policy, the Court may not simply disregard any impact experienced by plaintiffs beyond the impact reflected by the number of involuntary transfers. Plaintiffs contend that the impact of the Policy is also reflected by early resignations or voluntary transfers intended to avoid involuntary transfers to less desireable major metropolitan areas. Defendant counters that resignations and voluntary transfers are voluntary acts and, therefore, should not be considered in determining whether the Policy had a disparate impact. Rather, defendant submits that only involuntary transfers are relevant. However, measuring the impact of the Policy in terms of involuntary transfers would only measure the most obvious impact of the Policy on plaintiffs. Furthermore, there is a dispute whether the Court should consider the statistics during the first two years or the first four years the Policy was in effect. Therefore, as long as there is a genuine issue as to which statistics actually reflect the impact of the Policy on plaintiffs, there is a genuine issue as to a material fact thus precluding the Court from granting summary judgment for either party.

V. ALTHOUGH PLAINTIFFS' COMPLAINT STATES A CLAIM THAT MAY BE PROVED UNDER A THEORY OF OVERT DISCRIMINATION, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE GROUND THAT THE POLICY IS DISCRIMINATORY ON ITS FACE MUST BE DENIED BECAUSE THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE POLICY'S DISCRIMINATION ON THE BASIS OF SENIORITY IS A FORTIORI DISCRIMINATION ON THE BASIS OF AGE

Plaintiffs move for summary judgment contending that because there is an inherent correlation between age and seniority the use of seniority to select employees for transfer constitutes overt age discrimination. If there is a genuine issue as to a material fact or plaintiffs are not entitled to judgment as a matter of law, summary judgment must be denied. *See* Fed.R.Civ. Pro. 56.

**A.** *Because Plaintiffs' Complaint Alleged That the Policy Discriminated Against Plaintiffs on the Basis of Age, Plaintiffs May Prove Age Discrimination Under Any Theory, Including a Theory of Overt Discrimination*

■ Defendant contends that plaintiffs may not establish a claim under the ADEA under a theory of overt discrimination because plaintiffs did not raise this theory in the complaints. *See* Defendant United States Postal Service's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, and Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment at 15 (filed Jan. 9, 1986). Plaintiffs, however, must be permitted to proceed on a theory of overt discrimination for three reasons. First, plaintiffs' complaint clearly apprised defendant of its claim in accordance with Rule 8 of the Federal Rules of Civil Procedure. Specifically, plaintiffs alleged that they had "been discriminated against by the Postal Service on the basis of age." *Arnold* Complaint para. 28. This certainly gave defendant "fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); C. Wright & A. Miller, Federal Practice and Procedure § 1215. Secondly, the complaint must be construed as to do substantial justice. *See* Fed.R.Civ.Pro. 8(f); C. Wright & A. Miller, Federal Practice and Procedure § 1286. If the Court strained to so strictly construe plaintiffs' complaint to mean that plaintiffs would only proceed on a disparate impact theory, the Court would not be construing plaintiffs' complaint so as to do substantial justice. *See* C. Wright & A. Miller, Federal Practice and Procedure § 1286 (Rule 8(f) requires courts to construe pleadings liberally). Finally, even if plaintiffs' complaint sought relief only under a disparate impact theory, plaintiffs' are not bound by the legal theory on which they originally relied. *See, e.g., Hanson v. Hoffmann,* 628 F.2d 42, 53 n. 11 (D.C.Cir.1980) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1219 at 144–46 (1969)). Therefore, plaintiffs must be permitted to proceed on a theory of overt discrimination.

**B.** *Plaintiffs Are Not Entitled to Summary Judgment Because There is a Genuine Issue As to Whether the Policy's Discrimination on the Basis of Seniority Is, On its Face, A Fortiori Discrimination on the Basis of Age*

■ · Plaintiffs' contend that the CPP, on its face, discriminates against Postal Inspectors on the basis of age. The policy provides that "[w]hen a career path directed transfer is made, it will be the *senior* Level 23 in the country who has not met the major metropolitan service requirement." Inspection Service Manual 125.14, Attachment 2 to the Affidavit of A.R. Caggianno, Jr. Because the CPP requires that the most senior Level 23 receive a directed transfer first, it does, on its face, discriminate on the basis of seniority. *Cf. Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (employer's policy allowing captains who become disqualified for any reason other than age to bump less senior flight engineers is discriminatory on its face); *Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 711, 98 S.Ct. 1370, 1377, 55 L.Ed.2d 657 (1978) (employer's policy requiring female employees to make larger contributions to pension fund than male employees is discriminatory on its face). Discrimination on the basis of seniority, however, is not, on its face, discrimination on the basis of age. As plaintiffs admit, no court has expressly held that seniority is inherently related to age. *See* Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment at 5 (filed Jan. 22, 1986). Thus, the Court must look at the effect of the directed transfer policy on plaintiffs, which is best demonstrated by statistics. In this case, it is evident that a correlation between age and seniority may exist. *See* Exhibit C to Kolick Affidavit. Because it appears, however, that a number of more senior Level 23s are younger

than less senior Level 23s, *see* Exhibit C to Kolick Affidavit, the Court finds that there is a genuine issue as to whether the seniority of Level 23 Postal Inspectors is inherently related to age. Moreover, there is a genuine issue as to what statistics are relevant. *See supra,* p. 682. Therefore, summary judgment for the plaintiffs must be denied because there is a genuine issue as to whether the seniority based directed transfer policy, as applied to the plaintiffs, is a fiortiori discrimination based on age.

## VI. DEFENDANT'S MOTION TO STRIKE ALL OF PLAINTIFFS' REQUESTS FOR RELIEF EXCEPT BACK PAY MUST BE DENIED BECAUSE TO DO SO WOULD PRECLUDE PLAINTIFFS FROM OBTAINING RELIEF THAT WOULD MAKE THEM WHOLE, WHICH THEY ARE ENTITLED TO, IF THEY ARE VICTIMS OF AGE DISCRIMINATION

■■■ Defendant's move the Court to strike plaintiffs' demand for all relief other than back pay on the ground that section 633a(c) of the ADEA does not provide for injunctive, declaratory or compensatory relief other than back pay. Section 633a(c) provides:

> Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such *legal or equitable relief as will effectuate the purposes of this chapter.*

29 U.S.C. § 633a(c) (emphasis added). Rather than delimit the relief available under section 633a of the ADEA, Congress gave the courts broad power to grant all legal or equitable relief that will fulfill the remedial purpose of the ADEA. The policy behind the ADEA is to make whole any victim of age discrimination. *See Dickerson v. DeLuxe Check Printing Inc.,* 703 F.2d 276, 279 (8th Cir.1983); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982); *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3rd Cir.1977) ("Victims of discrimination are entitled to be restored to

the economic position they would have occupied but for the intervening unlawful conduct of employers."); *Foster v. Excelsior Springs City Hospital and Convalescent Center,* 631 F.Supp. 174, 175 (W.D. Mo.1986); *Folz v. Marriott Corp.,* 594 F.Supp. 1007, 1015–16 (W.D.Mo.1984); *EEOC v. County of Allegheny,* 519 F.Supp. 1328, 1336 (W.D.Pa.1981); *DeFries v. Haarhues,* 488 F.Supp. 1037, 1044 (C.D. Ill.1980). Although, the most common remedy sought in an ADEA case is an award of back pay intended to make whole the victim of discrimination, *see, e.g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (purpose of back pay is to make whole the victim of discrimination), it is not the only relief that the Court may grant.

■■ In this case, an award of back pay may amount to no award at all. Although some plaintiffs may have resigned or voluntarily transferred to avoid an involuntary transfer, most of plaintiffs' claims arise out of their being involuntarily transferred to major metropolitan areas with higher costs of living. In order to effectuate the remedial purpose of the ADEA, the Court must make plaintiffs whole by granting them all legal and equitable relief that they are entitled to. To deny plaintiffs such relief would be to foreclose an effective remedy under the ADEA and, thus, be at odds with the remedial purpose of the statute. Accordingly, at this stage of the proceeding the Court must deny defendant's motion to strike. However, by denying defendant's motion, the Court is not implicitly approving all of plaintiffs' requests for relief should the Court find that plaintiffs have been discriminated against on the basis of age. To address the issue of relief at this stage of the proceeding would be premature. Therefore, the Court will reserve final judgment on this issue until, and only if, the Court finds that the plaintiffs have suffered some injury as a result of age discrimination.

## VII. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss must be treated as

a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant's motion for summary judgment is denied, plaintiffs' cross motion for summary judgment is denied and defendant's motion to strike is denied. An Order shall issue forthwith.